ERIK A. OLSON [8479]
EOLSON@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

ATTORNEYS FOR DEFENDANT
MCKESSON CORPORATION

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| WEBER COUNTY, UTAH,<br><br>        Plaintiff,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>        Defendants. | **DEFENDANT MCKESSON CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Civil No. 1:18-cv-00089-RJS |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

I.     PLAINTIFF'S COMPLAINT NECESSARILY RAISES DISPUTED AND SUBSTANTIAL ISSUES OF FEDERAL LAW. ................................................................ 4

     A.     The Complaint "Necessarily Raises" Federal Issues. .............................................. 4

     B.     The Federal Issues are "Actually Disputed." ......................................................... 5

     C.     The Federal Issues Are "Substantial." .................................................................... 5

          1.     There is a federal interest in uniform interpretation of the CSA. ............... 6

          2.     The federal issues are significant to the federal government. .................... 7

          3.     This case presents a nearly pure issue of law that would apply to other federal cases. ..................................................................................... 8

          4.     Substantiality does not require a federal cause of action. .......................... 8

     D.     Federal Jurisdiction Will Not Disrupt the Congressionally-Approved Balance of Federal-State Judicial Responsibilities. ................................................ 8

II.    THE *YOUNGER* AND *BURFORD* ABSTENTION DOCTRINES ARE INAPPLICABLE HERE. .................................................................................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*,
913 F. Supp. 2d 243 (E.D. Va. 2012) ...................................................................................9

*Ankenbrandt v. Richards*,
504 U.S. 689 (1992) ..............................................................................................................9

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
850 F.3d 714 (5th Cir. 2017) ............................................................................................5, 8

*Breuer v. Jim's Concrete of Brevard, Inc.*,
538 U.S. 691 (2003) ..............................................................................................................1

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (7th Cir. 2005) .....................................................................................3, 6, 7, 8

*Cardinal Health, Inc. v. Holder*,
846 F. Supp. 2d 203 (D.D.C. 2012) ......................................................................................9

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987) ..............................................................................................................5

*Delaware v. Purdue Pharma L.P.*,
No. 1:18-cv-00383 (D. Del.) ..................................................................................................5

*Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*,
776 F.3d 463 (7th Cir. 2015) .................................................................................................4

*Exxon Mobile Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) ..............................................................................................................1

*Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif*,
463 U.S. 1 (1983) ..................................................................................................................5

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .................................................................................................... passim

*Gunn v. Minton*,
568 U.S. 251 (2013) ..................................................................................................1, 3, 5, 9

*Harp v. Starline Tours of Hollywood, Inc.*,
No. 2:14–cv–07704, 2015 WL 11118109 (C.D. Cal. May 13, 2015) ..........................................10

*Indymac Venture, LLC, v. Silver Creek Crossing*,
 Nos. C09–1069Z, C09–1222Z, 2009 WL 3698513 (W.D. Wash. Nov. 3, 2009) .........................10

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*,
 824 F.3d 308 (2d Cir. 2016)..................................................................................................4, 6, 7

*Joseph A. v. Ingram*,
 275 F.3d 1253 (10th Cir. 2002) ...................................................................................................9

*Virginia ex rel. Kilgore v. Bulgartabac Holding Grp.*,
 360 F. Supp. 2d 791 (E.D. Va. 2005) ........................................................................................10

*Masters Pharm., Inc. v. DEA*,
 861 F.3d 206 (D.C. Cir. 2017)..................................................................................................2, 4

*Merrell Dow Pharms. v. Thompson*,
 478 U.S. 804 (1986)..................................................................................................................4, 8

*Mims v. Arrow Fin. Servs., LLC*,
 565 U.S. 368 (2012).......................................................................................................................1

*N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*,
 853 F.3d 140 (4th Cir. 2017) .......................................................................................................4

*N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*,
 989 F. Supp. 2d 479 (E.D.N.C. 2013).......................................................................................10

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
 770 F.3d 1010 (2d Cir. 2014)............................................................................................. passim

*In re Nat'l Prescription Opiate Litig.*,
 No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161 (attached as **Exhibit 1**) .................................................................................................................................................7

*In re Nat'l Prescription Opiate Litig.*,
 No. 2804............................................................................................................................................1

*PDK Labs. Inc. v. U.S. Drug Enf't Admin.*,
 362 F.3d 786 (D.C. Cir. 2004)......................................................................................................9

*PNC Bank, N.A. v. PPL Elec. Util. Corp.*,
 189 F. App'x 101 (3d Cir. 2006) .............................................................................................3, 4

*Quackenbush v. Allstate Ins. Co.*,
 517 U.S. 706 (1996)......................................................................................................................10

*Ranck v. Mt. Hood Cable Regulatory Comm'n*,
 2017 WL 1752954 (D. Or. May 2, 2017) ....................................................................................4

*Shamrock Oil & Gas Corp.*,
313 U.S. 100 (1941) ........................................................................................................................1

*Sprint Communications, Inc. v. Jacobs*,
571 U.S. 69 (2013) ...................................................................................................................9, 10

*V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*,
27 F.3d 911 (3d Cir. 1994) ..............................................................................................................4

*Village of DePue, Ill. v. Exxon Mobil Corp.*,
537 F.3d 775 (7th Cir. 2008) ..........................................................................................................9

*Weber County, Utah v. Purdue Pharma, et al.*,
No. 1:18-cv-00089-RJS (D. Utah) ..................................................................................................1

*West Virginia v. McKesson Corp.*,
No. 2:17-cv-03555 (S.D. W.Va.) .....................................................................................................5

*Younger v. Harris*,
401 U.S. 37 ..................................................................................................................................9, 10

*Zeeco, Inc. v. JPMorgan Chase Bank, NA*,
No. 17-cv-384 2017 WL 6539504 (N.D. Okla. Dec. 21, 2017) ....................................................10

**Statutes**

21 U.S.C. § 882(a) ...........................................................................................................................9

21 U.S.C. § 903 ................................................................................................................................7

28 U.S.C. §§ 1331 ............................................................................................................................1

28 U.S.C. § 1441 ..............................................................................................................................9

21 U.S.C. §§ 801, *et seq.* .................................................................................................................1

**Other Authorities**

21 C.F.R. § 1301.74(b) .................................................................................................................2, 4

H.R. Rep. No. 91-1444 (1970), reprinted in 1970 U.S.C.C.A.N. 4566 .........................................6

*In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501 (DEA July 3,
2007) ................................................................................................................................................2

Utah Admin. Code R156-17b-615(3)(f) ..........................................................................................3

Utah Admin. Code R156-17b-615(15) ............................................................................................3

Utah Admin. Code R156-17b-625 ................................................................................................. 3

**PRELIMINARY STATEMENT**[1]

Because Plaintiff's action is based on asserted violations of federal law and raises federal questions, this matter belongs in federal court. Defendants removed this action because Weber County ("Plaintiff") asserts claims that distributors of prescription opioids ("Distributors") breached duties arising under the federal Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.* (the "CSA"). Plaintiff moves to remand for lack of jurisdiction even though its claims against Distributors are predicated on alleged violations of duties arising under the CSA. Plaintiff's reliance on duties arising under federal law creates federal question jurisdiction under 28 U.S.C. §§ 1331, as confirmed by controlling Supreme Court precedent. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); *Gunn v. Minton*, 568 U.S. 251 (2013). Those cases set forth a four-factor test pursuant to which federal jurisdiction over a state law claim is appropriate if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

All four factors are met here.[2] *First*, the Complaint necessarily raises federal issues because Plaintiff bases its claims against Distributors on duties to report and halt "suspicious orders" for prescription opioids, which arise solely out of the federal CSA; Plaintiff does not cite in either its Complaint or remand motion state law setting forth a duty to report and halt suspicious

---

[1] "JPML Dkt." refers to *In re Nat'l Prescription Opiate Litig.*, No. 2804 (JPML), and "Dkt." refers to *Weber County, Utah v. Purdue Pharma, et al.*, No. 1:18-cv-00089-RJS (D. Utah).

[2] Plaintiff incorrectly states that § 1331 and the applicable analysis should be strictly construed against removal, citing *Shamrock Oil & Gas Corp.*, 313 U.S. 100 (1941). Pl. Mot. at 2. In fact, the Supreme Court has explicitly overruled this portion of *Shamrock Oil*. *See* Notice of Removal at 5 n.1 (citing *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003); *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 379 (2012)).

1

orders.  *Second*, the parties actually dispute the federal issues because they contest whether Distributors violated the CSA.  *Third*, the federal issues are substantial given the federal interest in the CSA's nationwide regulatory scheme, which requires uniformity, and the federal Government's asserted interest in the subject matter of this litigation.  *Fourth*, federal jurisdiction will not upset any federal-state balance.

## BACKGROUND

Plaintiff's central theory of liability against Distributors is that Distributors violated two duties aimed at preventing diversion of controlled substances: (1) a duty to report "suspicious orders" for controlled substances and (2) a duty to halt shipments of suspicious orders.  Specifically, Plaintiff's claims against Distributors rest on allegations that Distributors should have reported and refused to ship purportedly suspicious opioid orders from Weber County pharmacies.  Compl. ¶¶ 713, 716-20, 726, 732, 741-43; *see also* Not. of Removal, Dkt. 1.

The duties on which Plaintiff's claims rest—the duties to report or refuse to ship suspicious opioid orders—arise only out of the federal CSA and its implementing regulations.  Specifically, the reporting duty—*i.e.*, to detect and report suspicious orders—is set forth only in the CSA's implementing regulations.  *See* 21 C.F.R. § 1301.74(b) (duty to monitor and report suspicious orders of controlled substances).  The shipment-halting duty arises out of the Drug Enforcement Administration's ("DEA") interpretation of the CSA, pursuant to which Distributors must "decline to ship" suspicious orders for controlled substances.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501 (DEA July 3, 2007), as the source of DEA's "Shipping Requirement").  Plaintiff has failed to

cite any independent state-law basis for these duties in either its Complaint or its remand motion.[3] Plaintiff therefore premises its state-law claims on a theory that Distributors violated duties arising under the CSA and related DEA regulations, which necessarily raises a federal question.

## ARGUMENT

Even where a plaintiff pleads its case under state law, its claims may raise a federal question sufficient to warrant removal. As noted, under the Supreme Court's *Grable* and *Gunn* decisions, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 315. Where these requirements are met, "jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quotation marks omitted).[4]

---

[3] None of the Utah laws or regulations that Plaintiff cites in the Complaint create an independent obligation to detect, report, or refuse to fill suspicious orders. *See* Compl. ¶ 708 (citing Utah Admin. Code R156-17b-615(3)(f) (requiring distributors to "be equipped with security measures, systems and procedures necessary to provide reasonable security against theft and diversion of prescription drugs"); Utah Admin. Code R156-17b-615(15) (requiring distributors to "establish, maintain and adhere to written policies and procedures" for the storage and distribution of prescription drugs, including policies for reporting losses or thefts); Utah Admin. Code R156-17b-625 (requiring annual reports to state authorities of the number of opiate doses dispensed and other basic statistical data unrelated to suspicious orders). Accordingly, even when Plaintiff purports to rely on state law, the only source of the alleged duties is the federal CSA. *See* Compl. ¶ 791 ("Defendants were negligent in disclosing to the County suspicious orders for opioids pursuant to the aforementioned Utah statutes.").

[4] Courts have found these factors to be satisfied in cases where, as here, state law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential. *See, e.g.*, *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (state law claims premised on violations of Communication Act satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (continued…)

3

All four elements are satisfied here, and Plaintiff's remand motion to should be denied.

I.  **PLAINTIFF'S COMPLAINT NECESSARILY RAISES DISPUTED AND SUBSTANTIAL ISSUES OF FEDERAL LAW.**

   A.  **The Complaint "Necessarily Raises" Federal Issues.**

An action "necessarily raises" a federal question when "the right to relief depends upon the construction or application of federal law." *PNC Bank*, 189 F. App'x at 104 n.3.[5] In making this determination, courts are to "begin by considering the duty underlying each claim." *NASDAQ*, 770 F.3d at 1020.  "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315 (2d Cir. 2016).

Here, Plaintiff's claims necessarily raise federal issues because they are premised on Distributors' alleged violations of legal duties (*i.e.*, to report and halt suspicious orders) that arise out of the CSA and related DEA regulations. *See* 21 C.F.R. § 1301.74(b) (setting forth reporting requirement); *Masters Pharm*, 861 F.3d at 212-13 (discussing shipping requirement). Despite its protestations to the contrary, Plaintiff's reliance on these federal duties is evident on the face of the Complaint. *See., e.g*., Compl. at ¶ 713 (stating the "Defendants had a duty to notice suspicious or alarming orders of opioid orders to the property authorities."); *see also, e.g.,* ¶¶ 726, 729, &

---

(state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law"); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on violation of Internal Revenue Code satisfy *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

[5] *See also Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808-09 (1986) (federal question jurisdiction exists if "vindication of a right under state law *necessarily turn*[*s*] *on some construction of federal law*" (emphasis added, internal citation omitted)); *N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017); *Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994).

(continued…)

741. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists when federal issue is presented "on the face of the plaintiff's properly pleaded complaint").[6]

### B. The Federal Issues are "Actually Disputed."

The federal issues raised by the Complaint are actually disputed. Plaintiff's entire argument on this score consists of stating that McKesson has paid fines to the DEA regarding suspicious orders. To prevail on its theory of liability, however, Plaintiff must litigate the precise "contours of [the] federal duty," "the scope of that duty," and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. Plaintiff must also demonstrate that such violations occurred in the proximity of Weber County, during the applicable statute of limitations, and in a way that proximately caused Plaintiff's alleged harm. These issues are "central point[s] of dispute," *Gunn*, 568 U.S. at 259, and cannot be waved away by generic references to federal enforcement activity.

### C. The Federal Issues Are "Substantial."

The substantiality inquiry "looks to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A federal issue "can be important for many reasons," including because (i) "state adjudication would undermine the development of a uniform body of federal law"; (ii) "resolution of the issue has broad significance for the federal government"; or (iii) "the case presents a nearly pure issue of law that would have applications to other federal cases." *Bd.*

---

[6] Plaintiff attempts to distract from the weaknesses of its remand motion by citing remand decisions from opioid-related cases in other jurisdictions. Pl. Mot. at 2, (citing *West Virginia v. McKesson Corp.*, No. 2:17-cv-03555 (S.D. W.Va.); *Delaware v. Purdue Pharma L.P.*, No. 1:18-cv-00383 (D. Del.). These unpublished, nonbinding, and most importantly, inapposite district court decisions to not alter any analysis here. Both cases involved actions brought by state attorneys general, not municipalities. Thus, in those cases, unlike here, the state's choice of forum was an important consideration because federal courts are "reluctant to snatch cases which a *State* has brought from the courts of that State." *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif*, 463 U.S. 1, 21 n.22 (1983) (emphasis added).

*of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017). Exercising jurisdiction in such cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

### 1. There is a federal interest in uniform interpretation of the CSA.

Courts often find federal issues to be substantial where they raise "questions [that] involve aspects of . . . complex federal regulatory scheme[s] . . . as to which there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (7th Cir. 2005) (quotation marks omitted).

Such rulings are especially common where, as here, federal agencies are responsible for implementing a national regulatory system for which uniformity is essential. As an example, in *NASDAQ*, the Second Circuit ruled that "the disputed federal issue in th[e] case—whether [the defendant] violated its Exchange Act obligation" was "sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." 770 F.3d at 1024. Likewise, in *Jacobson*, the Second Circuit held that "minimizing uncertainty over the tax treatment of mortgage-backed securities, as Congress intended, fully justif[ied] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 824 F.3d at 318.

Similarly, Plaintiff's claims would require a court to determine the scope of Distributors' duties under the CSA, implicating the federal interest in ensuring uniform interpretation of the CSA. In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4572. Plaintiff's claims thus "involve aspects of the

6

complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ*, 770 F.3d at 1024.  Furthermore, "minimizing uncertainty over" reporting and shipping obligations under the CSA "justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Jacobson*, 824 F.3d at 317-18.

Litigation in a federal forum is particularly warranted because Plaintiff's action is but one of more than a thousand cases pending in the MDL.  If this case is allowed to proceed in federal court and transferred to the MDL, the MDL court will be able to ensure uniform construction and application of the CSA and any duties arising under the CSA, thus achieving Congress's goal of a "unified approach" to regulating controlled substances.  If, on the other hand, this case were remanded to the state court, nothing would prevent that court from construing and applying federal CSA obligations in a manner inconsistent with the MDL court and with federal policy generally.

**2. The federal issues are significant to the federal government.**

The federal government has specifically stated the significance of cases like this one on that impact its ability to enforce the CSA.  Notably, the Department of Justice filed a Statement of Interest on behalf of the United States in the MDL, asserting the federal Government's interests in, among other things, its "law enforcement and legal activities in conjunction . . . with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the [CSA]*." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (attached as **Exhibit 1**) (emphasis added).  Allowing a state court to resolve claims premised on violations of the CSA—and to determine the scope of duties under the CSA—creates the potential for inconsistent interpretations across jurisdictions.  *See* 21 U.S.C. § 903 (although Congress did not intend to "occupy the field" of controlled substances regulation with

CSA, CSA pre-empts inconsistent state law). Conflicting interpretations of the CSA issued by state courts would inevitably undermine the federal government's efforts to enforce the statute and sow confusion among federally-regulated entities.

### 3. This case presents a nearly pure issue of law that would apply to other federal cases.

This case would require a court to determine the existence of duties arising under the CSA, the scope and contour of any such duties that exist, and "whether [Distributors' conduct] amounted to a breach of that duty," *NASDAQ*, 770 F.3d. at 1023, "nearly pure issue[s] of law" that would necessarily "have applications to other federal cases," *Tenn. Gas Pipeline*, 850 F.3d at 724. Indeed, these issues apply to nearly all actions pending in the MDL.

### 4. Substantiality does not require a federal cause of action.

Although Plaintiff correctly notes that the CSA does not create a private cause of action, it ignores *Grable* in suggesting that the lack of a federal cause of action nullifies federal jurisdiction. Pl. Mot. at 4-5. In *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction and in fact found that the federal issue presented in that case was sufficiently substantial notwithstanding the lack of a federal cause of action. *See Broder*, 418 F.3d at 196 ("The Grable Court found this last requirement to be satisfied even in the absence of a private right of action[.]").[7]

## D. Federal Jurisdiction Will Not Disrupt the Congressionally-Approved Balance of Federal-State Judicial Responsibilities.

The federal issues presented by the Complaint can be resolved in federal court "without

---

[7] In so holding, the Supreme Court limited Plaintiff's cited case, *Merrell Dow*. Pl. Mot. at 5. In *Grable*, the Court stated that applying *Merrell Down* too narrowly was inappropriate and would "convert[] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317.

(continued…)

8

disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against distributors,[8] and federal courts have exclusive jurisdiction over proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a). Thus, federal courts already are the exclusive forum for determining the scope of restraints on Distributors under the federal CSA.

## II. THE *YOUNGER* AND *BURFORD* ABSTENTION DOCTRINES ARE INAPPLICABLE HERE.

Supreme Court precedent holds that neither the *Younger* nor the *Burford* abstention doctrines apply to this case.[9] As an initial matter, the threshold element of *Younger* abstention is that the federal proceeding must "interfere with an *ongoing* state judicial proceeding." *Joseph A. v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (emphasis added). Thus, *Younger* is not applicable to removed cases because there are no parallel "pending state court proceedings." *Younger v. Harris*, 401 U.S. 37, 41. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals, . . . application by the lower courts of *Younger* abstention was clearly erroneous."). "Removal under 28 U.S.C. § 1441 simply does not leave behind a pending state proceeding that would permit *Younger* abstention." *Village of DePue, Ill.*

---

[8] *See, e.g.*, *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786 (D.C. Cir. 2004) (challenging DEA program enforcing CSA to prevent diversion of ephedrine); *Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243 (E.D. Va. 2012) (resolving registrant's motion to require DEA to return subpoenaed documents); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) (challenge under Administrative Procedure Act to DEA order suspending registration of distribution facility).

[9] Even if the doctrines were applicable, the Supreme Court has held that they should be applied extremely narrowly. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ("In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction."); *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'") (citation omitted).

(continued…)

*v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008). *See also Zeeco, Inc. v. JPMorgan Chase Bank, NA*, No. 17-cv-384 2017 WL 6539504 (N.D. Okla. Dec. 21, 2017) (collecting cases).[10]

Even if the Court were to apply *Younger*, it would not result in abstention here. The Supreme Court has "stressed" that circumstances justifying *Younger* abstention are "exceptional," and that there are only three such circumstances: "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citations omitted). This case involves none of those circumstances.

Likewise, *Burford* abstention does not apply in removed cases, such as this one, in which the Plaintiff pleads a claim for damages on ostensibly common-law grounds. In *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), the Supreme Court expressly held that "[u]nder our precedents, federal courts have the power to dismiss or remand cases based on [*Burford*] abstention principles *only* where the relief being sought is equitable or otherwise discretionary." *Id.* at 731 (emphasis added). Because the plaintiff in *Quackenbush*, like Plaintiff here,[11] brought a damages action, the Court held that the district court erred in applying the *Burford* doctrine. *Id.* Accordingly, neither the *Younger* nor *Burford* abstention doctrines apply to the instant matter.

## CONCLUSION

For the reasons set forth above, Plaintiff's remand motion should be denied.

---

[10] *See, e.g.*, *N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 989 F. Supp. 2d 479, 483 (E.D.N.C. 2013) ("Where a case has been removed . . . the state court has lost its jurisdiction over the matter. . . . as there is no ongoing state judicial proceeding here, the first requirement of *Younger* fails to be satisfied and abstention would be wholly inappropriate."); *Virginia ex rel. Kilgore v. Bulgartabac Holding Grp.*, 360 F. Supp. 2d 791, 797 (E.D. Va. 2005) (same); *Harp v. Starline Tours of Hollywood, Inc.*, No. 2:14–cv–07704, 2015 WL 11118109, at *2 (C.D. Cal. May 13, 2015) (same); *Indymac Venture, LLC, v. Silver Creek Crossing*, Nos. C09–1069Z, C09–1222Z, 2009 WL 3698513, at *2 (W.D. Wash. Nov. 3, 2009) (same).

[11] *See* Compl., Prayer for Relief (seeking *inter alia* compensatory damages and punitive damages).

DATED this 1st day of August, 2018.

                              **MARSHALL OLSON & HULL, PC**

                              BY:    /s/ TREVOR C. LANG
                                     ERIK A. OLSON
                                     TREVOR C. LANG

                              ATTORNEYS FOR DEFENDANT
                              MCKESSON CORPORATION

## **CERTIFICATE OF SERVICE**

     I hereby certify that this 1st day of August, 2018, I caused the foregoing **DEFENDANT MCKESSON CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** to be filed via the Court's electronic system, which electronically transmitted notice of such filing to all counsel of record.

                                                   /s/ Trevor C. Lang